ORIG Court.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| **CRAIG CLAY CHASTAIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 4:26-CV-665** |
| **v.** | ) | |
| | ) | |
| **THE CITY OF KANSAS CITY, MISSOURI,** | ) | **Plaintiff Requests Oral Arguments** |
| | ) | |
| **Defendant.** | ) | |

## PETITION FOR DECLARATORY AND INJUNCTIVE RELIEF AND REQUEST FOR EMERGENCY HEARING AND RULING

### INTRODUCTION

1. Craig Clay Chastain, Plaintiff (hereinafter "Chastain" or "Plaintiff"), brings this suit against the City of Kansas City, Missouri (hereinafter "the City" or "Defendant"), asking this Court to declare the provision in Section 702 of the Charter of the City of Kansas City, Missouri giving the City Council sixty (60) days to pass, reject, or amend an initiative ordinance in violation of Chastain's First Amendment rights. Chastain also petitions the Court to order the City to place on the ballot at the next municipal election in November 2026 initiative Ordinance No. 260610. In light of the imminence of the next municipal election, Chastain further requests an emergency hearing and ruling on his requests for declaratory and injunctive relief.

2. Chastain signed a petition requiring the City to place on the next available municipal or state election initiative Ordinance No. 260610 enacting a new ordinance which would continue an existing sales tax and enact a new sales tax for the purpose of constructing, operating, and maintaining a new city-wide transportation system.

3. After the City Clerk on June 12, 2026, certified both petitions as having sufficient signatures and notified the City Council and Mayor on July 2, 2026, of the same, the City Council referred both

1

petitions to the City's Committee for Legal Review, with a due back date of July 7, 2026. On the City's Agenda for July 7, 2026[1], was attached a Docket Memo pertaining to Ordinance No. 260610. The Docket Memo was issued by the City Manager's Office and contained an analysis of the Ordinance's Fiscal Impacts and Citywide Business Plan (CWBP) Impacts. The "Staff Recommendation" in the Docket Memo was neither "Recommend" or "Do Not Recommend" but rather was "Not Applicable."

4. The Committee for Legal Review has not met a single time in the entire month of July 2026. Ordinance No. 260610 has not been discussed at any of the City Council's meetings on July 9, 2026, July 16, 2026, July 23, 2026, or July 30, 2026.

5. The sixty-day provision does not serve any legitimate government purpose. Section 702 of the City Charter gives the Council a sixty (60) day-period after the City Clerk has submitted the petition to the Council to either pass or reject the initiative ordinance in its original form or pass the initiative ordinance in an amended form.

6. Section 702 further provides that if the Council fails to pass the initiative ordinance in its original form or passes it in an amended form within the sixty-day period, the Committee of Petitioners may certify to the City Clerk that they require the initiative ordinance be submitted to a vote of the electors in its original form. The Committee of Petitioners must make this request within ten days after the Council's final action or the expiration of the sixty-day period.

---

[1] Although the date of July 7, 2026, appears on the City Council's July 2, 2026, Final Meeting Minutes as the date the Special Committee for Legal Review was due back, this date does not coincide with the City Council's regularly scheduled meetings, which would have been July 9, 2026. However, on the City Clerk's Agenda Items for July 7, 2026, is Ordinance No. 260610 with the Petition Pages and Docket Memo attached. There are no corresponding Meeting Minutes for a July 7, 2026, City Council or Special Committee for Legal Review meeting.

2

7. Under Section 703 of the City Charter, as long as the Committee of Petitioners timely certifies its request, the City Council must place the initiative ordinance in its original form to the voters at the next available municipal or state election. Consequently, the original initiative ordinance gets placed before the voters—albeit after an unnecessary and obstructive 60-day delay which the City has used to render petition initiatives moot.

8. This is not the first time the City Council has used the sixty-day provision in Charter Section 702 to delay putting initiative ordinances on the ballot. Chastain has become the City's perennial petition driver with his petition initiative efforts over the past couple of decades. Chastain is on the Committee of Petitioners for Ordinance No. 260610, and he signed the petition for this Ordinances. As recently as July 6, 2026, Mayor Quinton Lucas said in a statement to *The Kansas City Star* that, "Kansas City has a robust initiative petition system and no person has availed himself of our petition process more than Clay Chastain for over a generation." Mayor Lucas also suggested that city residents should question whether the practice should continue, given Chastain's "abundant use of the city's initiative petition system."

9. Not coincidentally, Mayor Lucas is one of three members constituting the Committee for Legal Review. Mayor Lucas's resolve to curtail Chastain's use of the City's petition initiative process is evidenced by the City Council's referring Ordinance No. 260610 to the Committee for Legal Review, which has failed to act by the required response date of July 7, 2026. In fact, the Special Committee for Legal Review has no meetings scheduled where any such discussion could take place during the entire month of July 2026.

10. The City's intent is obvious: use the 60-day provision in Section 702 of the City Charter to negate Chastain's First Amendment rights by preventing Ordinance No. 260610 from being placed on the ballot for the next municipal election in November 2026. If Ordinance No. 260610

3

does not go on the November 2026 ballot, it would be postponed until the next regular election in April 2027.

## PARTIES

11. Craig Clay Chastain is a natural person who is registered to vote in the City of Kansas City, Missouri. Chastain was also one of the Committee of Petitioners for the initiative ordinance at issue in this action.

12. Defendant City of Kansas City, Missouri, operates under a council-manager form of municipal government whereby the City Council (which includes the mayor and 12 other elected members) is responsible for adopting the city budget, approving mayoral appointees, levying taxes, and enacting or amending ordinances. The mayor presides over City Council meetings, represents the City in official capacities, and serves as a member of the City Council with a vote.

13. On information and belief, Kansas City is the largest municipal government in Missouri and one of the largest municipal governments in the United States, with a budget exceeding $1 billion.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2201, since this is a civil action arising under the United States Constitution and the laws of the United States.

15. Venue in this Court is proper under 28 U.S.C. § 1391, since a substantial part of the events or omissions giving rise to Chastain's claim occurred in this judicial district.

## STATEMENT OF FACTS

16. Chastain, as a registered voter in the City of Kansas City, Missouri, signed a petition calling for the continuation of an existing sales tax and the enactment of a new sales tax to fund the construction, operation, and maintenance of a new city-wide transportation system.

4

*Timeline of City's Actions:*

17. On June 1, 2026, the Committee of Petitioners filed with the City Clerk an Initiative Petition entitled, "Petition for Upgrades to KC UNCL[2], Airport Monorail Connecting KCI to Union Station HUB" (hereinafter "Monorail Petition").

18. On June 2, 2026, the City Clerk notified the City Council of the filing referenced in Paragraph 17, *supra.* (City File No. 260522).

19. On June 11, 2026, at its regularly scheduled council meeting, the City Council received and filed the Board of Elections Letter, Certificate of Receipt, and the signed Monorail Petition pages. (City File No. 260522).

20. At the June 11, 2026, City Council meeting, Mayor Quinton Lucas proposed that the standing committee meetings and business and legislative sessions for the week of June 22, 2026, be cancelled, and those meetings and sessions resume the week of June 29, 2026. This proposal was passed.

21. On June 12, 2026, the City Clerk certified the Monorail Petition as sufficient in that it contained the required number of signatures of Kansas City, Missouri registered voters.

22. On June 15, 2026, the City Clerk notified the City Council and Mayor Quinton Lucas that the Monorail Petition had been examined and certified as sufficient. (City File No. 260577).

23. City File No. 260577 states that the Monorail Petition is on the City Council's July 2, 2026, Agenda and includes the June 12, 2026, Certificate of Sufficiency.

24. The Final Meeting Minutes for the July 2, 2026, City Council meeting states that the Monorail Petition is being referred to the "Special Committee for Legal Review due back on 7/7/2026."

---

[2] It is not clear to what "UNCL" refers. This came from the City Clerk's office and is not what the petition title states.

Case 4:26-cv-00665-BP   Document 1-1   Filed 08/05/26   Page 5 of 21

25. Docket Memo for the Monorail Petition (designated therein as Ordinance/Resolution # 260610) stated that the transportation sales tax proposed in the Monorail Petition did not exceed the maximum percentage allowed under Missouri law, and the ¼ cent sales tax for capital improvements as proposed by the Monorail Petition was also within the limits prescribed by Missouri law. The Docket Memo also acknowledged that the City Clerk had presented the Attached to the Final Meeting Minutes is a Docket Memo from the City Manager's Office. The Monorail Petition to the City Council after it had been certified as sufficient pursuant to Section 702 of the City Charter.

26. The Docket Memo for Ordinance No. 260610 also identified the Ordinance's potential impact on the objectives of the Citywide Business Plan, with the impacted objectives being to [d]evelop a multimodal regional transportation system for all users[;] [d]evelop environmentally sustainable strategies that improve quality of life and foster economic growth[;] [e]nsure adequate resources are provided for continued maintenance of existing infrastructure];] and [f]ocus on delivery of safe connections to schools.

27. Under the "Staff Recommendation" section of the Docket Memo were three possible choices "Recommend," "Do Not Recommend," and "Not Applicable." The "Not Applicable" box was checked.

28. In the "Other Impacts" section of the Docket Memo was the question, "How does this legislation contribute to a sustainable Kansas City?" The response was, "Increased funding for transit services in the city."

29. Section 702 of the City Charter provides in relevant part that after the City Clerk certifies an initiative petition as sufficient and submits the ordinance set forth therein to the City Council at its next meeting, the City Council has sixty (60) days after such submission by the City Clerk to

6

either pass the ordinance in its original form, pass the ordinance in a "form different from that set forth in the petition," or fail to pass the ordinance.

30. Section 702 further provides that in the event the City Council fails to pass the initiative ordinance within sixty days after its submission by the City Clerk, or passes it in a form different from that set forth in the petition, the committee of petitioners may require the submission of the proposed ordinance to the electors in its original form by certifying that request to the City Clerk within ten days after the final action by the Council or expiration of the sixty-day period.

31. The Agenda Items for the July 7, 2026, City Council Meeting[3] indicate that Ordinance No. 260610 was still in the control of the Special Committee for Legal Review. The City Manager's Docket Memo for Ordinance No. 260610 was one of the attachments to this Agenda item.

32. The City Council did not discuss Ordinance No. 260610 at its meetings on July 9, 2026, July 16, 2026, July 23, 2026, or July 30, 2026.

33. The Special Committee for Legal Review, which is comprised of three members, to-wit: Mayor Quinton Lucas, Melissa Robinson, and Andrea Bough, has not met at all during the entire month of July 2026, nor are any upcoming meetings for this special committee scheduled on the City Clerk's calendar.

34. Section 703 of the City Charter provides that, "[u]pon receipt of such certification [by the Committee of Petitioners, as set forth in Section 702 of the City Charter], the City Clerk shall certify the fact to the Council at its next regular meeting. The Council shall thereupon submit the proposed ordinance to the electors at the next available municipal or state election held not less than thirty (30) days after such certification by the committee of petitioners for which the city can lawfully provide required notices to the election authorities without seeking a court order."

---

[3] *See* Footnote No. 1, *supra.*

35. In order for Ordinance No. 260610 to be placed on the November 2026 ballot, the City Council must pass it on or before its meeting on August 20, 2026, in order to meet the Election Board's deadline of August 25, 2026.

***City's History of Interference with the Initiative Process:***

36. In June 1995, petitioners, including Chastain, submitted petitions to the City Clerk requesting that a one-half cent sales tax be used for the restoration of the Liberty Memorial and Union Station, both of which are of historical significance located within the city limits of Kansas City. The City Council, relying upon the sixty (60) day provision in the City Charter, failed to pass an ordinance placing the measure raised in the petition on the August 8, 1995, ballot. The committee of petitioners then certified their request that the City Council place the ordinance on the November 7, 1995, ballot—which request was declined.

37. In response, Chastain and other petitioners filed suit in the Circuit Court of Jackson County, seeking a writ of mandamus ordering the City to place the proposal on the November 7, 1995, ballot. On September 13, 1995, the Honorable Ronald R. Holliger, Judge for the Circuit Court of Jackson County, Missouri ruled that the City failed to perform its ministerial duty to submit a proposed ordinance to the voters on the next state election date and ordered the City to take necessary steps to include the proposed ordinance to the voters on the August 1996 ballot.[4] *See Clay Chastain v. The City of Kansas City, Missouri,* Case No. CV95-18327, (Jackson County Cir. Ct., September 13, 1995).

38. The City filed a motion for reconsideration of Judge Holliger's Order of September 13, 1995. On October 3, 1996, the court issued a preemptory writ of mandamus directing the City to take the

---

[4] The City argued that the November 7, 1995, election date was a "special election date," and not a regular municipal or state election. The court agreed with the City, thereby requiring the City to place the ordinance on the August 1996 ballot because that was the next regular election date.

8

steps necessary to place the proposal on the November 5, 1996, ballot. *See State ex rel. Clay Chastain v. City of Kansas City, Missouri,* 968 S.W.2d 232, 236 (Mo. App. 1998). However, execution of the court's October 3, 1996, order was stayed by the Defendant USAC's supersedeas bond pending appeal. The November 5, 1996, date passed while the appeal was pending.

39. While Chastain's plan could not be put on the November 5, 1996, ballot because of the stay pending appeal, the City put its own Union Station restoration plan on the November 5, 1996, ballot, which the voters approved. This in effect rendered Chastain's petition moot. Thus, the writ, the court concluded, "for all intents and purposes, expired." *See id.* at 237.

40. On February 4, 2014, the Missouri Supreme Court rejected the City's request for declaratory judgment that Chastain's 2011 initiative ordinance at issue appropriated money, in contravention of Article III, Section 51 of the Missouri Constitution. *See City of Kansas City v. Karen Chastain,* 420 S.W.3d 550 (Mo. 2014). The initiative ordinance was submitted to the City Clerk in 2011 and proposed the imposition of a transportation sales tax and a capital improvements tax for "transportation purposes" and "capital improvements." Finding no state constitutional impairments to the proposed ordinance, the Missouri Supreme Court found that the trial court incorrectly dismissed Karen Chastain's counterclaim for mandamus to require the City to place the ordinance on the ballot.

41. This time, the City did place Chastain's ordinance on the ballot, knowing it would likely fail because the enabling language in the ordinance did not specify which projects were to be funded with the proposed sales taxes. As both the City and Chastain predicted, the voters rejected the ordinance.

## COUNT ONE - REQUEST FOR DECLARATORY RELIEF

9

42. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1-41 as if fully set forth herein.

43. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, any court of the United States may declare the rights and other legal relations of any interested party seeking such declaration, provided that a case of actual controversy is within its jurisdiction. In other words, in order to bring a declaratory judgment action under 28 U.S.C. § 2201, "the plaintiff must establish the existence of a dispute that is 'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that [is] 'real and substantial.'" *Courthouse News Service v. Harris,* Civil Action No. ELH-22-0548, Mem. Op. at 52-53 (D. Md., December 22, 2022) (quoting *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007)) (brackets in original).

44. Here, the dispute is definite and concrete. The City is acting upon the provision in Section 702 of the City Charter which gives the City Council 60 days to either pass an initiative ordinance in its original form, pass an initiative ordinance in a form that the City Council has amended, or reject the ordinance.

45. The Monorail Petition requires the City to put the initiative ordinance on the ballot for the next available municipal or state election—which in this case is the upcoming November 2026 mid-term election.

46. The City Clerk did not submit the Monorail Petition to the City Council until July 2, 2026. Under Section 702 of the City Charter, the City Council has 60 days from July 2, 2026, to either pass the ordinance in its original form, amend it then pass it, or reject it. This 60-day provision makes it impossible for the measure to be put on the November 2026 election ballot because the Election Board requires all measures be submitted to them on or before August 25, 2026, in order to be placed on the November 2026 election ballot.

Case 4:26-cv-00665-BP    Document 1-1    Filed 08/05/26    Page 10 of 21

47. Sixty days from July 2, 2026, is August 31, 2026. Pursuant to Section 703 of the City Charter, only after August 31, 2026, could the Committee of Petitioners submit its request to the City Clerk that Ordinance No. 260610 be placed on the November 2026 ballot. The City Clerk must then present this certification to the Council at its next regular meeting, after which the "Council must submit the proposed ordinance to the electors at the next available municipal or state election held not less than thirty (30) days after such certification by the committee of petitioners for which the City can lawfully provide required notices to the election board without seeking a court order." Section 703 of the City Charter.

48. Historically, in Kansas City, Missouri, petition initiatives have greater chance of passing in elections where there is high voter turnout. The November 2026 mid-term election is such an election.

49. As of the date of filing the instant action, the City Council has not even discussed Ordinance No. 260610. Instead, the City Council referred the ordinance to its "Special Committee for Legal Review" with a due back date of July 7, 2026.

50. July 7, 2026, came and went with no response from the Special Committee for Legal Review. In fact, this "special committee" did not meet even one time in July 2026, and the City Clerk's calendar does not show any upcoming meetings of this special committee.

51. The City Council has known since at least July 2, 2026, that the Monorail Petition had been certified as sufficient. More than one month later, the City Council still has taken zero action on Ordinance No. 260610, other than referring it to the Special Committee for Legal Review, which, in turn, has taken zero action, and does not appear it will take any action in August, given the absence of any scheduled meetings on the City Clerk's calendar.

11

52. Section 702 of the City Charter enables the City to frustrate and bypass Chastain's First Amendment rights to petition his government.

53. Among other rights essential to freedom, the First Amendment guarantees "the right of the people…to petition the Government for redress of grievances." U.S. Const., Amdt. 1. "The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives." *Borough of Duryea v. Guarnieri,* 131 S.Ct. 2488, 2495, 564 U.S. 379, 389 (2011). "A petition conveys the special concerns of its author to the government and, in its usual form, requests action by the government to address those concerns." *Id.*

54. The Monorail Petition represents the special concerns of its author, Craig Clay Chastain, about the flaws of Kansas City's current transportation system. Chastain not only authored the Monorail Petition language, but he signed it as a registered voter of the City of Kansas City, Missouri. Accordingly, Chastain has standing to bring this request for declaratory relief.

55. By authoring and signing the Monorail Petition, Chastain is expressing to the City his concerns about Kansas City's inadequate public transportation system and is requesting that the City take action to address those concerns by passing the Monorail Petition in its original form as an ordinance and putting that ordinance to the voters to decide at the November 2026 election.

56. The City's actions taken in response to Chastain's expression of his concerns as manifested in the Monorail Petition showcase the City's intent to rely upon the 60-day provision in Section 702 of the City Charter to defeat and negate Chastain's right to petition his government.

57. Because the sixty (60) day provision in Section 702 of the City Charter acts as a law which burdens or restricts Chastain's right to petition his government, this Court must apply strict scrutiny to determine its constitutionality.

12

58. The City must demonstrate to this Court that the sixty (60) day provision in Section 702 serves a truly vital and extremely important public need, and it is narrowly tailored to achieve that interest. The City cannot make this showing.

59. Section 702 allows the City to sit on an initiative ordinance for sixty (60) days. Only after that 60-day period has expired is the City required to either pass the initiative ordinance in its original form, pass the initiative ordinance in an amended form, or reject the ordinance. Once the City has taken one of those actions, or has failed to act entirely, then and only then may the Committee of Petitioners certify to the City Clerk its request that the City place the initiative ordinance in its original form on the ballot at the next regular municipal or state election.

60. In essence, then, the sixty (60) day provision in Section 702 serves only to give the City an opportunity to delay an initiative ordinance from getting on the ballot at the next available and regular municipal or state election. The City has strategically used Section 702 to delay other initiative ordinances and render them moot. *See* discussion *supra,* Paragraphs 36-41.

61. If the City were to argue that the sixty (60) day provision in Section 702 serves an important public need because it gives the City Council sixty days to thoroughly consider an initiative ordinance and to amend it if necessary so that it meets the City's objectives, that argument necessarily fails. Section 702 also gives the Committee of Petitioners the right to request, after the sixty (60) day period has expired, that the City put the original form of the initiated ordinance on the next available municipal or state election ballot, after which the City Council must then submit the proposed ordinance in its original form to the electors at the next available municipal or state election.

62. The sixty (60) day provision in Section 702 thus serves no legitimate purpose, let alone an important public need.

Case 4:26-cv-00665-BP Document 1-1 Filed 08/05/26 Page 13 of 21

63. The sixty (60) day provision is not narrowly tailored to achieve any legitimate government interest. Instead, it gives the City the unbridled power to delay taking action on initiative ordinances so that those ordinances are rendered moot in relation to competing ordinances the City puts on the ballot during that sixty-day period or so that the initiative ordinances are sent to the electorate for voting during elections with low voter turn-out, thereby decreasing the chances the ordinance will be passed.

64. It is appropriate for this Court to grant Chastain his request for declaratory relief for the additional reason that the declaratory judgment he requests will terminate the uncertainty or controversy giving rise to this action. This Court may take judicial review of the number of times Chastain has brought an initiative petition to the City and the City has intentionally waited out the 60-day period provided in Section 702 so that Chastain's initiative petition is either rendered moot or is placed before the voters on low-turnout elections. *See* discussion *supra,* Paragraphs 36-41, of Chastain's litigation efforts against the City requesting the courts to order the City to place his initiative petitions on the ballot.

65. Striking the sixty (60) day provision in Section 702 of the City Charter as violative of Chastain's First Amendment Right to petition his government will enable Chastain, and any other registered voter in the City of Kansas City, Missouri, to effectively voice his or her concerns to the City via the initiative petition process. The sixty (60) day provision in Section 702 has been and is currently being taken advantage of by the City to silence the petitioners' concerns.

66.     Mayor Quinton Lucas has recently expressed his opposition to Kansas City's petition process. On July 6, 2026, Mayor Quinton Lucas said in a statement to *The Kansas City Star* that, "Kansas City has a robust initiative petition system and no person has availed himself of our petition process more than Clay Chastain for over a generation." Mayor Lucas also suggested

14

that city residents should question whether the practice should continue, given Chastain's "abundant use of the city's initiative petition system."

67. Not coincidentally, Mayor Lucas is one of three members constituting the Committee for Legal Review. Mayor Lucas's resolve to curtail Chastain's use of the City's petition initiative process is evidenced by the City Council's (of which Mayor Lucas is a voting member) referring Ordinance No. 260610 to the Special Committee for Legal Review. The Special Committee for Legal Review failed to act by the required response date of July 7, 2026; failed to have any meetings during the entire month of July 2026 to discuss Ordinance No. 260610; and, according to the City Clerk's calendar, has no meetings scheduled for the entire month of August 2026. Mayor Lucas's actions show that he does not want Chastain to be able to express his concerns to the City by using the petition process.

68. Chastain's ability to exercise his right to petition his government, as guaranteed by the First Amendment to the United States Constitution, has been severely curtailed by the sixty (60) day provision in Section 702 of the City Charter.

69. Chastain thus requests that this Court declare the sixty (60)-day provision in Section 702 of the City Charter to be unconstitutional.

70. Chastain requests that this Court grant him a speedy hearing on his request for relief, given the imminent deadlines associated with getting Ordinance No. 260610 on the November 2026 election ballot.

71. Chastain also requests that this Court grant him relief in the form of fees and costs for his *pro se* representation.

## COUNT TWO - REQUEST FOR IMMEDIATE INJUNCTIVE RELIEF

72. Plaintiff realleges and incorporates by reference the allegations of Paragraphs 1-41 as if fully set forth herein.

73. Chastain requests that this Court issue permanent injunctive relief against the City by ordering the City to place Ordinance No. 260610 on the November 2026 Kansas City municipal election ballot.

74. In order to succeed on his request for injunctive relief, Chastain must show this Court the following: (1) He is likely to succeed on the merits of his underlying case; (2) Without the injunctive relief, Chastain will suffer harm that cannot be remedied by money damages; (3) When balancing the equities, the harm to Chastain if the injunctive relief is not granted far outweighs the harm to the City if the injunctive relief is granted; and (4) the injunctive relief serves the public interest. *See Winter v. NRDC,* 555 U.S. 7 (2008).

75. Chastain is likely to succeed on the merits of his request for declaratory relief, given the patent unconstitutionality of the sixty-day provision in Section 702 of the City Charter, *see* discussion *supra* Paragraphs 42-71. Having declared the sixty-day provision in Section 702 unconstitutional, the City would have to immediately place Chastain's initiative ordinance on the November 2026 ballot.

76. The equitable remedy of injunctive relief is available only when the plaintiff shows the court he or she will suffer irreparable injury if the injunctive relief is not granted. In other words, the plaintiff must show a real or immediate threat that he or she will be wronged again. *See Martin v. Sargent,* 780 F.2d 1334, (8th Cir. 1985).

77. In the absence of permanent injunctive relief against the City, Chastain will be irreparably harmed. There is a real or immediate threat that the City will, once again, rely on the sixty (60)

day provision in Section 702 to ensure Ordinance No. 260610 does not go before the voters in the November 2026 election and, in fact, does not go before the voters until August 2028.

78. If Ordinance No. 260610 does not go on the November 2026 ballot, it would be postponed until the next regularly scheduled election in **August 2028**. During the interim, the City could put its own competing ordinance on the ballot at a special election in February 2027, thereby rendering Ordinance No. 260610 moot. Looking at the City's actions in the past in which they did exactly that (*see* discussion *supra,* Paragraphs 36-41), and considering the almost two-year delay from November 2026 to August 2028, the threat that the City will take advantage of this two-year delay and put its own competing measure on the ballot is real and immediate.

79. Not only do the City's actions in the past foretell its actions now (*see* discussion *supra,* Paragraphs 36-41) but also its current failure to take any action at all on initiative Ordinance No. 260610 demonstrates the real or immediate threat faced by Chastain. The City Council has not even discussed the initiative ordinance over one month after the ordinance was certified to the City Council as sufficient. Nor has the Special Committee for Legal Review (which purportedly has "control" over the initiative ordinance and is headed up by Mayor Lucas himself—who publicly expresses his disdain for Chastain's use of the initiative process) met or scheduled any meetings to discuss the initiative ordinance.

80. The balancing of harms favors granting Chastain injunctive relief. Chastain's harm if injunctive relief is not granted outweighs the harm to the City if his request for injunctive relief is granted. As discussed *supra,* Chastain's harm consists of losing the opportunity to have his initiative petition voted on by a larger number of voters in the November 2026 election *and* his initiative petition not being placed before the voters until August 2028. It goes without saying

17

that having one's First Amendment right to petition be squelched for two years is a significant harm.

81. Chastain's harm also consists of having to draft and circulate another initiative petition in the event the City puts a competing measure on the ballot before Chastain's initiative petition is placed on the ballot in August 2028. Drafting and circulating each petition initiative entails a substantial investment of time and money on Chastain's part. If the City's competing measure were adopted by the voters in the interim, Chastain would have to successfully utilize the City's referendum process to get that measure rendered null, causing Chastain to suffer more monetary losses as a result and to suffer the risk that the referendum would fail. Either scenario causes harm to Chastain in that his First Amendment right to petition his government is severely curtailed.

82. The harm to the City if injunctive relief is granted is nominal. If the City is ordered to put Chastain's instant initiative petition on the November 2026 ballot, this would not cost the City any additional money since the November 2026 election is a regularly scheduled election. Further, if the voters reject Ordinance No. 260610, the City has lost nothing. If the voters approve Ordinance No. 260610 at the November 2026 election, the City gains the vision brought to them by Chastain of how to vastly improve the City's dilapidated public transportation system.

83. The injunctive relief requested by Chastain serves the public interest. Chastain's Monorail Petition, if placed as an ordinance before the voters on the November 2026 ballot and approved by them, gives the residents and visitors to Kansas City a transportation system that will, by its very nature, benefit the public.

84. Chastain requests that this Court grant him the injunctive relief requested of ordering the City to put Ordinance No. 260610 on the November 2026 election ballot.

18

85. Chastain also requests that this Court grant him relief in the form of fees and costs for his *pro se* representation.

## REQUEST FOR EMERGENCY HEARING AND EXPEDITIOUS RULING

86. Given the very short timeframe within which the City Council must submit Ordinance No. 260610 to the electorate for the November 2026 election, Chastain respectfully requests that this Honorable Court grant an emergency hearing and issue an expeditious ruling on both Counts in the instant Petition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig Clay Chastain respectfully requests that this Honorable Court enter judgment in his favor on all Counts of his instant Petition and against Defendant and that he be granted the following relief:

a. Conduct an emergency hearing on all Counts in the instant Petition;

b. Issue an expeditious ruling in favor of Plaintiff on all Counts;

c. Award Plaintiff his reasonable fees and litigation costs and expenses for his *pro se* representation; and

d. Any other relief that this Court deems equitable, appropriate, and just.

Respectfully submitted,

Craig Clay Chastain, *Pro Se Plaintiff*
615 Ridge Street
Bedford, Virginia 24523
Telephone: (540) 666-1738
Email: claychastain007@gmail.com

19

## CERTIFICATION AND CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief, that this Petition: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the Petition otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Signed this ___4th___ day of August, 2026.

Signature of Plaintiff: _Craig Clay Chastain_

Printed Name of Plaintiff: _CRAIG (CLAY CHASTAIN)_

20

# CERTIFCATE OF SERVICE

I hereby certify that on August 5, 2026, I filed the foregoing with the Clerk of the Court by mailing the same to the Clerk of the Court via overnight delivery on August 4, 2026, and that I have served the City the foregoing document via United States Marshal or by a person specially appointed by the court pursuant to Federal Rule of Civil Procedure 4(c)(3), who will deliver a copy of the foregoing document and summons to the City Manager of the City of Kansas City, Missouri, to-wit:

Mario Vasquez
City Manager's Office
City Hall, 29th Floor
414 E. 12th Street
Kansas City, MO 64106

Respectfully submitted,

Craig Clay Chastain, *Pro Se Plaintiff*
615 Ridge Street
Bedford, Virginia 24523
Telephone: (540) 666-1738
Email: claychastain007@gmail.com

21